UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LUKE LIBERTO**<br>　**Plaintiff** | **CIVIL ACTION NO.: 15-7158** |
| **VERSUS** | **SECTION: "'H"** |
| **CITY OF MANDEVILLE,<br>RICK RICHARD AND<br>DETWECTIVE JASON REDEAU**<br>　**Defendants** | **MAGISTRATE: 1** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## AFFIDAVIT

PARISH OF ST. TAMMANY

STATE OF LOUISIANA

　　BEFORE ME, the undersigned authority, personally came and appeared:

　　　　　　　　　　　　JASON READEAU

Who, after being duly sworn, did depose and state:

1.　I have been employed by the Mandeville Police Department ("MPD") as a duly sworn police officer since March 2009, and am fully aware of the facts and circumstances at issue in the captioned lawsuit filed against the me, Chief Rick Richard ("Chief Richard") and the City of Mandeville ("Mandeville") by Luke Liberto ("Liberto"). I am over the age of eighteen and have personal knowledge of all matters attested to in this affidavit. If I were to testify at trial my testimony would be the same as in this affidavit.

2.　At all times relevant herein, I was on duty and acting in my official capacity as a member of and employee of the MPD, and in addition to my employment experience, I have received extensive training in law enforcement, particularly in investigating crimes and the issue of

1

probable cause.

3. All of the below-described activities and events took place during the course and scope of my employment by the MPD. I have personal knowledge and a clear recollection of the facts and circumstances set out below.

4. I personally handled the investigation involving Luke Liberto bearing Mandeville Police Department Incident Number 1501-0496.

5. I was personally involved in virtually all aspects of that investigation, including interviewing the victim, collecting evidence, preparing the affidavits in support of search warrants and preparing the affidavit in support of the arrest warrant issued for Liberto's arrest on or about January 17, 2015. I did not use false information to obtain the arrest warrant for Liberto as Plaintiff alleges. During the curse of her interview, the complaining victim seemed to be upset and emotional, at times on the verge of tears. I also reviewed various text messages exchanged between the complaining victim and Liberto in the hours after the alleged simple rape wherein Liberto indicated the complaining victim had initiated the sexual contact. However, the complaining victim's texts clearly stated that she felt she had been physically sexually assaulted in her sleep, which corroborated her statement given to the initial responding officers and the statement she later gave to me. Therefore, I felt there was enough evidence of probable cause to support the arrest warrant for Simple Rape against Liberto.

6. I am personally aware that at no time was Chief Richard consulted by me, nor did he conduct and/or participate in any part of the investigation, development of probable cause and/or arrest and subsequent detention of Liberto on or about January 17, 2015 and thereafter.

7. I am familiar with, authored in part and have reviewed on a number of occasions the case

reports connected with this investigation, which are attached as Exhibit "B" to the Mandeville Defendants' Motion for Summary Judgment ("the MSJ") in regards to the above captioned lawsuit. I hereby adopt the case reports and affidavits as my testimony as if fully reproduced herein, and I attest to the accuracy of all of the facts set out therein.

8. At the time I prepared the affidavit offered in support of the arrest warrant in this matter, which is attached separately as Exhibit "C" to the MSJ, I was convinced that the factual basis supporting the existence of probable cause was overwhelming, and I am still convinced of that conclusion today.

9. At the time of his arrest, Liberto was given an opportunity to explain what happened between he and the complaining victim. Liberto chose at that time to exercise his constitutional rights and stated that he would rather wait to speak with his lawyer before making any statements to me.

10. When Liberto was placed under arrest, he complied and put his hands behind his back to be handcuffed. At no time was there ever a struggle of any kind and there was no use of force of any sort to complete the arrest of Liberto. Liberto was then transported to the MPD to be booked where there was no use of force or violence used against him.

11. Liberto was then transferred to the St. Tammany Parish Sheriff's Office jail facility where he was placed into the custody of the St. Tammany Parish Sheriff's Office. At no time during this process was there ever a need for the use of force and/or use of excessive force against Liberto. In addition, Liberto was not injured by me or any other member of the MPD during his arrest, detention and eventual transfer to the custody of the St. Tammany Parish Sheriff's Office.

12. In my professional opinion, there was no legal need for including in the affidavit in support

of the arrest warrant the criminal record or background of the complaining victim, because it was in no way exculpatory in nature regarding whether there was probable cause to arrest Liberto. Also, in my years of experience as a police officer, even though a complaining victim may have a criminal record or unfavorable background, it has no bearing on whether probable cause can be determined as to whether someone with a less than favorable criminal record and/or background can be the victim of a sexual assault.

13. In my professional opinion, there was no legal need for including in the affidavit in support of the arrest warrant the testimony of Liberto's sister, Gina Liberto, regarding the nature of the relationship between Liberto and the complaining victim. Gina Liberto was not a witness to what occurred between Liberto and the complaining victim, therefore her opinion of the relationship between Liberto and the complaining victim would have had no bearing on whether probable cause for the arrest of Liberto could be determined as to whether the complaining victim was sexually assaulted by Liberto.

14. I did not wrongfully arrest Liberto, and had no role in the decision to set Liberto's bond, the decision to detain Liberto, and/or the decision to place a parole hold on Liberto.

15. Neither I nor other members of the MPD ever inflicted harm to Liberto as his arrest was supported by probable cause as determined by Judge Gardner in signing the arrest warrant and as determined by Judge Penzato after receiving into evidence the stipulation between Liberto's attorney and the Assistant District Attorney as to the authenticity of my police report and affidavit in support of Liberto's arrest. In addition, at no time was force ever used against Liberto for any reason during his arrest, detention and/or transfer into the custody of the St. Tammany Parish Sheriff's Office jail.

16. No one from the MPD, including Chief Richard and me, had any control or power over the

decision to initiate prosecution of the case against Liberto as that is a decision completely within the purview of the District Attorney.

17. In addition, no one from the MPD, including Chief Richard and me, had any involvement in the Court's decision and/or Liberto's parole officer's decision to order Liberto remanded, to set Liberto's bond, and/or to place a parole hold on Liberto resulting in his continued confinement.

_____  6-19-16
JASON REDEAU            date

Sworn to and subscribed before me
this 19 day of August, 2016.

_____
NOTARY PUBLIC
Keith M. Detweiler, La. Bar No 20784
My commission is for life.