UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LUKE LIBERTO** | * | **CIVIL ACTION** |
| | * | |
| | * | **NO.: 2:15-cv-07158** |
| **VERSUS** | * | **SECTION: "H"** |
| | * | Honorable JANE Triche Milazzo |
| | * | **MAG. "1"** |
| **CITY OF MANDEVILLE,** | * | Magistrate Janis van Meerveld |
| **RICK RICHARD AND** | * | **JURY TRIAL DEMAND** |
| **DETECTIVE JASON READEAU** | * | |

*******************************************

## OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT

**NOW INTO COURT**, through the undersigned counsel comes plaintiff, Luke Liberto, who respectfully requests this Court to deny the defendants' Motion for Summary Judgment and in so finding that a cause of action has been plead sufficiently and that there is in fact a genuine dispute as to a material fact at issue before the Court based on pleadings, depositions, answer to interrogatories, and admissions on file, and together with affidavits. *Celotex Corp. v Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In considering the summary judgment evidence, "the Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 145 L.Ed.2d 105 (2000).

### Exhibits

EXHIBIT A - Deposition of Jason Readeau

EXHIBIT B - Officer Incident Report of Jason Readeau

EXHIBIT C - Deposition of Luke Liberto

EXHIBIT D - Affidavit of Luke Liberto

EXHIBIT E - Affidavit of Jo Beth Rickels

EXHIBIT F - Attorney General Records

EXHIBIT G - Text messages

EXHIBIT H - Affidavit of John Lindner

## **FACTS**

In the early morning hours of January 17, 2015, plaintiff, Luke Liberto was contacted at his residence at 645 Lafayette Street, Mandeville, Louisiana by several Mandeville police officers, to include but not limited to Detective Jason Readeau. Liberto was shown a warrant for his arrest by Detective Jason Readeau for simple rape of the alleged victim, Lavita Bailey. On or about mid December 2014, Liberto allowed the alleged victim, Lavtia Bailey, his homeless ex-girlfriend, to reside with him and his sister at the home referenced above in Mandeville, Louisiana. Sometime between December 26, 2014 and January 2, 2015, Liberto and his girlfriend ended their sexual relationship. Following the end of the relationship, the alleged victim willingly shared a bedroom with Liberto for weeks. Further, she was not on the lease nor paid any rent for her stay at 645 Lafayette Street.

On the night of the alleged incident, Liberto awoke to find the alleged victim in his bed awake and making sexual advances toward him to which he responded. Liberto and the alleged victim began to participate in consensual sexual relations when Ms. Bailey started talking about their continued relationship. After a discussion about their relationship and upon the realization that Liberto did not wish to continue a committed intimate relationship with Ms. Bailey, she became angry and started a verbal argument which lead to her leaving the house. Ms. Bailey then proceeded

to the Mandeville Police Department and accused Liberto of raping her. She was interviewed by Detective Jason Readeau.

No further investigation or inquiry was done by the Mandeville Police department into Ms. Bailey's allegations when a warrant for Liberto was written and signed. A warrant was prepared on or about 3:00 a.m. and based on only one statement made by Ms. Bailey and based on a suspicious set of facts, allegations and circumstances. Detective Readeau put his hands on Liberto without his permission and placed him under arrest and held him in custody without any inquiry or investigation into the credibility, criminal record, or background of the alleged victim. No witnesses were interviewed regarding the nature of her and Liberto's relationship before the warrant was prepared, obtained and executed. This includes Mr. Liberto's sister, Gina Favret, who was the legal lessor of the residence and was present in the home on the night and early morning hours of Mr. Liberto's arrest. Ms. Favret's information about the incident and/or the nature of the relationship between the two parties during the time Bailey came to stay at the residence was never considered by Detective Readeau and/or the Mandeville Police department before, during, or after Mr. Liberto's arrest.

Detective Jason Readeau falsely placed in his arrest warrant that the text messages between Mr. Liberto and Bailey supported her allegations and the arrest for simple rape. Per their conversation, Mr. Liberto denied any wrong doing in the text messages to Bailey's allegations which were provided to Detective Readeau by both parties. Detective Readeau used false information to obtain an arrest warrant against Mr. Liberto, showing his actions were for a specific purpose not authorized by law without false information. The actions and lack of actions of Detective Readeau, within his official capacity of his employment with the Mandeville Police Department, were grossly

disproportionate to the need for action under the circumstances and amounts to abuse of official power, which shocks the conscience.

In his deposition, Detective Readeau testified as to the broad range of discretion he is afforded in determining whether to proceed in obtaining an arrest warrant, such as when an alleged victim presents herself at the Mandeville Police department claiming that her ex-boyfriend, with whom she was still willingly living with, raped her while she was "asleep". In regard to how he begins an investigation such as this, Detective Readeau testified:

> A: I start every case by I make a list of the people involved. One of the other courses that I've taken is I'm a Homeland Security law enforcement intelligence analyst, which means I run everything on everybody prior to. I even - that's the first thing I do. When I get a case, I start looking at all the names involved, you know, make sure I know exactly who I'm dealing with, you know, everything that may or may not end up being relevant to the case about them. We have access to several different databases in order to gather information on people involved in an investigation, whether their witnesses, victims, suspects, whatever. Typically, I do that first. Then we will conduct an interview of the victim. Based on what we get from the victim, then we will determine whether there are witnesses that need to be interviewed. If so, we'll reach out to those witnesses and attempt to conduct the interviews. P:23 - L:21-25; P:24 - L:1-15

> Q: Is there any discretion on the part of the patrolman or the supervisor to determine the credibility of the victim?

> A: There always is discretion. That being said, they usually notify us and just pass the investigation off to us.

> Q: So they're going to defer to your judgment?

> A: Yes. P:22 - L:17-25

> A: The detective assigned to the case is given the latitude and discretion to conduct their investigation based upon their determination of the path that the investigation leads them to. P:25 L:22-25

> Q: What is the proper thing to do if you don't think the victim is credible?

A: If I don't think the victim is credible and I have facts that show that the victim is not credible, I deactivate the case, close it out, and send it to my supervisor.

Q: So you have that discretion -

A: I have that -
Q: --to stop right there?

A: I have that discretion. Not only do I have that discretion, I have done that.
P:26 - L:21-25; P:27 - L:1-6

Q: ..initially, if you determine the person is not credible, you know, if Detective Readeau is sitting there saying, "I don't find this person to be credible," you can stop it right there, can't you?

A: I can.

Q: Is that the policy of the Mandeville Police Department?

A: It is allowed by our policy for an officer to exercise their discretion when conducting an investigation.

Q: And if you make that determination, and - that the victim - the story you're hearing is not credible, would it be an abuse of your discretion to go seek a warrant anyway?

A: I would say, yes, it would be.

Q: Now, here, you determined that the victim was believable?

A: She was credible enough to prepare and submit a warrant.

Q: Did you ever - prior to seeking the warrant, did you ever consider going to interview Mr. Liberto?

A: We did.

Q: You did?

A: Yes.

Q: And did you?

A: No.

5

Q: Why not?

A: Because we determined that an interview of Mr. Liberto would not change the fact that this case would merely be - this case would equate to two individuals who had a different story of the same incident for a he said/she said incident; and that not judging anyone on their prior histories and taking everything at face value, our options were grand jury or arrest.
P:41 - L:10-25; P:42 - L:1-25; P:43 - L:1-2.

Q: Did you ever consider going to interview Ms. Favret prior to seeking the arrest warrant?

A: No.

Q: Why not?

A: Because we didn't have any information that she was actually in the room when the sexual contact occurred, so we determined it would not have any relevance to the consent of the sexual encounter that was in question.
P:44 - L:15-23

Q: Do you recall telling him that regardless of what statement he made, it would not make any difference?

A: If I was holding an arrest warrant in hand, then that would be a logical answer to that question. Because, at that point, an arrest warrant has been issued, so the arrest is going to be carried out upon contact, yes.
P:46 - L:25; P:47 - L:1-7

Q: Did you ever consider obtaining an arrest warrant for sexual battery?

A: We reviewed the Louisiana Revised Statutes and determined that simple rape best suited the facts as we had determined them at that point.

Q: So you didn't consider sexual battery?

A: We considered - we reviewed all the statutes. Sexual battery was one of them. But, ultimately, we opted to go with simple rape.
P:48 - L:18-24

Q: And she stayed there even though she was allegedly raped there?

A: That's what I was told.

Q: Do you find that to be credible?

A: I find it to be what she - I didn't deem her not to be credible.

Q: Okay. So if I'm understanding your testimony, everything that's contained in your report that this lady told you, you deemed to be credible?

A: I determined her to be credible, yes.

Q: And if is fair to say that had you determined it not to be credible, you would have not have sought an arrest warrant for Mr. Liberto?

A: Yes.
P:52 - L:25; P:53 - L:1-14

Q: As we sit here today, do you find the victim to have been credible?

A: I believe that my determination made at the time was an accurate determination. It's my understanding of the criminal procedure, was not that any - whoever screened the case determined that the case was - the victim was not credible. It's my understanding that the prosecution didn't go forward because the victim just refused to follow through with the prosecution. That's my understanding.

Q: And how did you obtain that understanding?

A: I was contacted by an attorney with the Louisiana Attorney General's office in reference to the case.
P:56 - L:19-25; P:57 - L:1-9

Q: So you didn't tell whoever this gentleman or lady was from the Attorney General's office, you didn't say, "Well", you know, "I really think this lady credible and I think that the prosecution should go forward"? You didn't say anything like that?

A: I didn't say either way. I didn't say she was credible. I didn't say she wasn't. Just, "Okay. Thanks for letting me know".
P:58 - L:16-24

Q: Did this cause you to have any doubts about the credibility of what occurred during the incident?

A: It did not.

Q: Why not?

A: Because, again, based on the interviews and my investigation, that the only facts that were in contention were whether or not the contact, sexual contact, was consensual.

Q: Well, the fact that she makes the statement, "I'm not going to get you in legal trouble", that doesn't have any bearing on it?

A: That has no bearing to my investigation at all.

Q: Did you review anything else besides these text messages? Any other -

A: Not that I recall. I don't remember reviewing anything.
P:68 - L:3-20

**LIBERTO DEPO:**

Q: Okay. Was your sister present for when you were arrested?

A: Yes, sir.

Q: Did they interview her that you know of?

A: Not that I know of.
P:47 - L:19-24

A: I think he was - he seemed kind of irritated that I wouldn't give him a statement or answer his questions then.
P: 50 - L:17-20

## QUALIFIED IMMUNITY

The issue of "whether qualified immunity is applicable to an official's actions is a question of law." *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir.1996). "However, where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." *Pouillon v. City of Owosso*, 206 F.3d 711, 715 (6th Cir.2000)

(quotation and ellipses omitted); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004).

Whether a police officer who applied for an arrest warrant is protected by qualified immunity from liability under § 1983 depends upon whether the warrant application is so lacking in indicia of probable cause as to render the officer's belief in its existence unreasonable. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983. *Luthe v. City of Cape May*, 49 F.Supp.2d 380 (D.N.J.1999).

"[T]he standard for determining the reasonableness of an official's belief in the existence of probable cause is whether a reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he therefore should not have applied for the warrant *390 under the conditions." *Orsatti*, 71 F.3d at 483 (*citing Malley*, 475 U.S. at 345, 106 S.Ct. 1092; but *see Lippay v. Christos*, 996 F.2d 1490, 1500-01 (3d Cir.1993)) (holding that "[i]n order to prevail on [a § 1983] claim [for unlawful arrest], [a plaintiff] needed to satisfy the test enunciated in *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), which requires a showing that the maker of the affidavit either stated a deliberate falsehood or acted with a reckless disregard for the truth; [p]roof of negligence or innocent mistake is insufficient[, a plaintiff must] ... demonstrate that [the police officer] acted with reckless disregard for the truth, [as well as] prove that [the officer] made the statements in his affidavits with a high degree of awareness of their probable falsity") (*quoting Garrison v. Louisiana*, 379 U.S. 64, 74, 85, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964)) (internal quotations omitted). "Because the qualified immunity doctrine provides the official with immunity from suit, not simply trial, the [D]istrict [C]ourt should resolve any immunity question at the earliest possible stage of the litigation." *Orsatti*, 71 F.3d at 483 (citations omitted);

9

accord *Wilson*, 119 S.Ct. at 1697 (1999); *Conn v. Gabbert*, 526 U.S. 286, ---- - ----, 119 S.Ct. 1292, 1295-96, 143 L.Ed.2d 399 (1999); *Luthe v. City of Cape May*, 49 F.Supp.2d 380, 390 (D.N.J.1999).

The affidavits of Luke Liberto, Jo Beth Rickels (Liberto's mother) and John Lindner (Liberto's public defender in this matter) clearly demonstrate that defendant Jason Readeau abused his discretion in going forward with preparing and obtaining a warrant for the arrest of Luke Liberto. Further, considering the totality of the circumstances, it is clear Readeau abused his discretion in going forward with the arrest process of Liberto considering Readeau's own testimony, as well as the affidavits of Liberto, Jo Beth Rickels, and John Lindner. In Liberto's affidavit, as well as in his deposition, Liberto clearly states that although Readeau had the opportunity to interview his sister, who was present in the home when the alleged rape occurred, before Readeau obtained the warrant for Liberto's arrest, he elected not to do so. Further, in his affidavit, Readeau said something to the effect of "having doubts of the victim's motives and that he thought maybe she was being vengeful but made the arrest anyway because of the heat the New Orleans Police Department was taking on rape cases."

Jo Beth Rickels, Liberto's mother, states in her affidavit that she had three occasions to speak to Detective Readeau after the initial arrest of Liberto in January, 2015. The third conversation with Detective Readeau occurred in person at the CAC (Child Advocacy Center) around September 28, 2015. At that time, Readeau asked how Liberto was and said that he thought there was something not right about that girl (referring to the alleged victim). Readeau also said that the Mandeville Police Department had been feeling pressure at the time because of what was going on in the New Orleans Police Department to the effect that they had been accused of not making arrests in their

sexual abuse cases and the Mandeville Police Department did not want the same to be said about them.

Finally, John Lindner, who was Liberto's public defender, states in his affidavit that he met with Detective Readeau on January 26, 2016 at the St. Tammany Parish Jail for the purpose of taking a statement from Liberto. Toward the end of the interview, Detective Readeau stopped the tape and went off the record. While they were off the record, Detective Readeau made a statement in which he claimed he would deny if later addressed, that he was not sure what to do so he wrote the warrant up on the victim's statement alone on the night or early hours of the morning of the alleged incident and presented it to the judge to decide. Readeau stated that he presented the warrant to the court because of the pressure the New Orleans Police Department was having about uninvestigated rape allegations.

Lindner also states that he was present after Liberto's arrest for charges of simple rape and was his counsel for his bond hearing on the simple rape charge on the date February 6, 2015 that at no time did he stipulate to probable cause for any criminal charge during any hearing under docket number 72-65138.

From the affidavits, as well as the deposition testimony of Luke Liberto and Detective Readeau, it is clear that on the night of the incident, Detective Readeau had ample opportunity to not only interview the alleged victim, but also investigate this claim. It is also clear that Detective Readeau had discretion as to whether or not to proceed to obtain an arrest warrant as the Detective investigating the incident. Detective Readeau's own testimony is to the effect that if he does not believe the alleged victim to be credible, then he can not proceed any further. Moreover, it was

Detective Readeau's testimony that if he did not believe the alleged victim, it would be an abuse of his discretion to go forward and obtain an arrest warrant and execute the warrant.

Clearly, in this case, given the affidavits of Liberto, Rickels and Lindner, as well as the deposition testimony of Readeau and Liberto, obviously Readeau abused his discretion in going forward with obtaining and executing an arrest warrant on Liberto. Clearly this is sufficient to deny him of any qualified immunity as set forth in the defendants' motion for summary judgment. "A police officer has probable cause only when he discovers **reasonably reliable information** [emphasis supplied] that the suspect has committed a crime." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000). Furthermore, "in obtaining such reliable information, an officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence. Rather, the office must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest." *Id*. This Court stated in *Gardenhire,* that a bare allegation of criminal wrongdoing, although possibly justifying a brief investigatory detention, was insufficient by itself to establish probable cause that the suspect had committed a crime. *Id.* at 317. Police officers may not "make hasty unsubstantiated arrests with impunity," nor "simply turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone." *Ahlers v. Schebil*, 188 F.3d 365, 371-72 (6th Cir. 1999). In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Fridley*, 291 F.3d at 872; *see also Gardenhire*, 205 F.3d at 315 (explaining that the Court "must determine whether a jury conclude that a reasonable officer could have believed that the arrested individual had probably committed or was committing a crime").

In the present case, it is clear that by his own admission, Detective Readeau not only abused his discretion, but lacked probable cause under the circumstances to go forward with the arrest of Liberto, thereby violating his civil rights.

Moreover, it is clear that not only was Readeau motivated by pressure being put on the Mandeville Police Department by what was going on at the New Orleans Police Department, but also this creates sufficient reason to substantiate plaintiff's Monel claim against Chief Richard and the Mandeville Police Department.  Accordingly, given all the evidence in the record, it is clear that substantial questions of fact exist regarding the circumstances surrounding Liberto's arrest and the lack of probable cause therefore.  Therefore, the Motion for Summary Judgment must be denied.

## ARGUMENT

Luke Liberto has in fact stated a cause of action against all parties and failure to train or Monelle claim for violation of Liberto's fourth amendment right against unlawful seizure of his person and life and liberty for over 80 days.  Other fourth amendment rights such as 11th constitutional amendment as to due process and equal treatment rush to obtain an arrest warrant for simple rape due to policy of Mandeville Police Department and its officers in this case because of popular opinion in media regarding New Orleans Police Department rape investigation outcry.

United States Constitution 4th amendment and 11th amendment

There is a genuine issue as to material fact alleged in pleading, depositions, answer to interrogatories, and admissions on file, and together with affidavits to meet the standards in *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).  Liberto does in fact allege facts that would cast doubt on or invite inquiry as to the scope or an immunity based on the

defendants' alleged malice, bad faith, and reckless disregard during the so called investigation of the simple rape.  *Bibbins v. City of Baton Rouge*, 489 F.Supp.2d 562, 581 (M.D. La. 2007).

Wherefore, the Plaintiff did state a plausible cause of action against Chief Richard and Detective Readeau in their individual and/or official capacities as a matter of law and fact.  Plaintiff has stated viable cause of action against Mandeville Police Department, Chief Richard, and other supervisors to include Sgt. Van Whitehead whose role in the case became known to the plaintiff at the end of the discovery process.  Therefore, for the reasons stated herein and in the memorandum filed in support of this opposition, the plaintiff prays this Court to deny all of Defendants' claims for summary judgment.

## **CONCLUSION**

Given the foregoing, it is submitted that substantial fact questions exist with regard to whether or not probable cause existed for the arrest of Luke Liberto, given the lack of credibility of the alleged victim.  Accordingly, the defendants' Motion for Summary Judgment should be denied.

Respectfully submitted by:

*/s/ John M. Robin*
_____
JOHN M. ROBIN, LA. BAR NO. 11341
JULIE M. KNIGHT, LA. BAR NO.24564
600 COVINGTON CENTER
COVINGTON, LOUISIANA 70433
TELEPHONE: 985-893-0370
FAX: 985-893-2511
Attorneys for Luke Liberto

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of September, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing, fax, USPS or email to the following:

Keith M. Detweiler
John D. Carter
Gerald J. Nielsen
Nielsen, Carter & Treas, LLC
3838 N. Causeway Blvd., Suite 2850
Metairie, Louisiana, 70002

I further certified that I mailed the foregoing document and the notice of electronic filing by first class mail to the non-CM/ECF participants.

*/s/ John M. Robin*
JOHN M. ROBIN