UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LUKE LIBERTO** | **CIVIL ACTION** |
| **VERSUS** | **NO: 15-7158** |
| **MANDEVILLE CITY et al** | **SECTION: "H"(1)** |

ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment (Doc. 16). For the following reasons, this Motion is **GRANTED**.

BACKGROUND

Plaintiff brings this action pursuant to 14 U.S.C. § 1983 and Louisiana state law seeking damages arising out of his January 17, 2015 arrest by members of the Mandeville Police Department. Prior to his arrest, Plaintiff was living with his ex-girlfriend (the "Complainant"). Plaintiff states that in the early morning hours of January 17, 2015, he awoke to find the Complainant making sexual advances toward him despite the fact that their relationship was over. He avers that they had consensual sexual relations, after which they began to talk about their continued relationship. This discussion led to an argument, which led to the Complainant leaving the house. Later that day Plaintiff was contacted by the police, shown a warrant for his arrest, and

1

arrested by Defendant Jason Readeau of the Mandeville Police Department for the simple rape of the Complainant. Plaintiff alleges that the warrant was improper because it was based only on one statement of the Complainant without any further investigation into her background or the accuracy of her statement. He avers that he was wrongfully imprisoned for 80 days despite the lack of factual allegations to support charging him with simple rape.

Plaintiff alleges that Defendant Readeau violated his Fourth and Fourteenth Amendment rights through false arrest and excessive use of force. He brings claims against both Readeau and Mandeville Police Chief Rick Richard in their official and individual capacities. He also asserts a claim against the City of Mandeville for having ineffective policies to prevent such an incident from occurring. He finally brings claims for assault and battery under Louisiana state law.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden

---

[1] Fed. R. Civ. P. 56(c) (2012).
[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[3] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir. 1997).

shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4]  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5]  "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[6]  "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7]  Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

## LAW AND ANALYSIS

Defendants rely on several legal theories in arguing that summary judgment is warranted.  First, Defendants Readeau and Richard assert that they are entitled to qualified immunity for the individual capacity § 1983 claims asserted against them.  They assert that they are likewise entitled to qualified immunity with regard to the state law claims.  With regard to the official capacity claims and the claims against the City of Mandeville, Defendants assert that these claims are legally insufficient and should be dismissed.  Plaintiff opposes this Motion.  The Court will address each of these arguments in turn.

---

[4] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).
[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).
[6] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[7] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).
[8] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

**I. Qualified Immunity- §1983 Claims**

Plaintiff brings claims for false arrest and excessive force in violation of the 14th Amendment. Defendants assert that qualified immunity applies to shield them from individual-capacity liability on these claims. Qualified immunity serves to "shield[] government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."[9] "Once a defendant raises the defense of qualified immunity, 'the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'"[10]

In *Saucier v. Katz*, the Supreme Court promulgated a two-step analysis to determine if an official has stepped outside the bounds of qualified immunity.[11] Under that test, the initial inquiry is whether the Plaintiff has alleged a constitutional violation.[12] If established, the next inquiry is whether the defendant's conduct was objectively reasonable in light of clearly established law at the time the conduct occurred.[13] In *Pearson v. Callahan*, the Court retreated somewhat from this rigid two-step inquiry, giving courts leave to decide which prong to consider first.[14] In this matter, the Court will first consider whether Plaintiff has provided adequate support for a constitutional violation as to his false arrest and excessive force claims.

**A. False Arrest**

Plaintiff contends that Readeau, in applying for and obtaining the arrest warrant in this matter, violated his right to freedom from false arrest. He

---

[9] *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).
[10] *Harris v. Serpas*, 745 F.3d 767 (5th Cir. 2014) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)).
[11] 533 U.S. 194, 201 (2001).
[12] *Id.*
[13] *Id.*
[14] 555 U.S. 223, 236 (2008).

4

contends that Readeau's actions may be imputed to Richard as the Mandeville chief of police. The Fourth Amendment, made applicable to the states through the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause."[15] "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"[16] A police officer is entitled to qualified immunity for an arrest if a reasonable person in his position could have believed that he had probable cause to arrest.[17] Whether probable cause exists is judged based on the facts and circumstances within a police officer's knowledge at the moment of arrest.[18]

There is no dispute that Readeau obtained a warrant prior to arresting Plaintiff. "Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest."[19] Plaintiff alleges, however, that the warrant is tainted by misrepresentations. In *Franks v. Delaware*, the Supreme Court held that an officer may violate the Fourth Amendment when, in connection with an application for a warrant, he "makes a false statement knowingly and intentionally, or with reckless disregard for the truth" that result in a warrant being issued without probable cause.[20] The Fifth Circuit has "interpreted *Franks* liability to also include liability for an officer who

---

[15] U.S. Const. amend. IV.
[16] *Piazza v. Mayne*, 217 F.3d 239, 245 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).
[17] *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001).
[18] *Haggerty v. Texas Southern University*, 391 F.3d 653, 655–56 (5th Cir. 2004).
[19] *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982).
[20] 438 U.S. 154 (1978).

makes knowing and intentional *omissions* that result in a warrant being issued without probable cause."[21]  "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, will the shield of immunity be lost." [22]  In full, Readeau offered the following affidavit in support of the warrant in question:

> On January 17th, 2015, at approximately 0250 hours, the victim, [Complainant], came to the Mandeville Police Department to report she had been raped by her roommate, Luke Liberto. [Complainant] explained she had been living with Liberto in his sister's home after becoming homeless in mid December 2014. She further explained she and Liberto had been involved in an on and off relationship wherein they were intimate however, the two had broken up as of January 2nd, 2015, but were still living together as [Complainant] attempted to secure new living arrangements. [Complainant] advised she and Liberto shared a bedroom and slept in separate twin beds in that room but had not been intimate or had any sexual contact since January 2nd, 2015.  On the evening of January 16th, 2015, [Complainant] fell asleep in her bed at approximately 2340 hours after returning home from work at approximately 2315 hours.  Sometime prior to 0130 hours [Complainant] was awoken from her sleep with the feeling of being vaginally penetrated.  [Complainant] thought she was having a sexual dream, as she felt the sensation of receiving oral sex.  Upon waking up and becoming aware of her surroundings and situation she found Luke on top of her with his penis inside her vagina. She further noticed she was unclothed, although she had been wearing a thermal shirt, running pants and underwear when she went to bed. [Complainant] state that upon realizing what was going on she immediately pushed Luke off of her and told him she did not want to have sexual intercourse with him.  Luke stood over her for a short time masturbating then went to a bathroom where he stayed for an unknown amount of time. [Complainant] and Luke began arguing and she contacted a friend to come pick her up. After leaving [Complainant] advised she exchanges several text messages with Luke, which she showed to the investigating offices [sic], where in Luke blamed her for the encounter.  The text

---

[21] *Michalik v. Hermann*, 422 F.3d 252, 258 n. 5 (5th Cir. 2005).
[22] *Malley v. Briggs*, 475 U.S. 335, 344 (1986).

messages from Luke indicated [Complainant] had possibly initiated the contact; however, [Complainant] messaged [sic] clearly stated she felt she had been physically sexually assaulted in her sleep, consistent with her statements to officers. Luke's response to [Complainant]'s accusations were that she was "crazy." [Complainant] is currently at St. Tammany Parish Hospital with an officer from MPD, where she is being examined and evidence collected.

Plaintiff argues that this affidavit contains intentional omissions and misrepresentations sufficient to impose *Franks* liability. Plaintiff does not contest that Readeau interviewed the victim prior to applying for the warrant. He further does not contest Readeau's recollection of the substance of that interview. Plaintiff contends, rather, that Readeau's investigation was insufficient, and that, had he consulted Plaintiff's mother or sister prior to making the arrest, he would have discovered that the victim's credibility was questionable.

This argument is not persuasive. "The constitution does not guarantee that only the guilty will be arrested."[23] Though the Fifth Circuit has declined to directly address the issue, other circuits have held that "evidence of an affirmative defense may be relevant to the probable cause inquiry."[24] The Court must, however, look to "totality of circumstances within a police officer's knowledge at the time of the arrest."[25] Though he may not ignore conclusively established evidence, an officer does not have an affirmative duty to investigate every possible defense a suspect may have.[26] Here, there is no allegation that Readeau was presented with any evidence other than the testimony of the Complainant and the text message conversation she had with

---

[23] *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982).
[24] *Dressner v. Crowe*, No. 13-81, 2013 WL 5236658, at *3 (E.D. La. Sept. 16, 2013).
[25] *Id.*
[26] *Id.*

7

the Plaintiff.[27]  Because the warrant was not based on a misrepresentation or omission of any facts within Readeau's knowledge, a *Franks* challenge must fail.

Plaintiff also makes much ado about the fact that Readeau allegedly stated that he felt pressured to apply for the warrant due to the fact that the New Orleans Police Department was facing criticism for its handling of rape cases.  Even if this allegation is taken as true, the significance of such a fact is lost on this Court.  The Court must analyze the evidence submitted in support of the warrant application under an objective standard—that is, "whether a reasonably well-trained officer in petitioner's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant."[28]  Readeau's personal motivations aside, the Court finds that a reasonably well-trained officer in Readeau's positon would not have known that the above affidavit failed to establish probable cause. Readeau accurately reproduced the substance of his interview with the Complainant and the content of the text messages she presented to him.  He had no knowledge of other facts at the time the application for the warrant was made.  A neutral judge reviewed the application and, finding probable cause, issued a warrant.  Because the application is not "so lacking in indicia of probable cause as to render official belief it its existence unreasonable," no constitutional violation occurred and Readeau is entitled to qualified immunity on this claim.[29]  Because Readeau's actions did not violate Plaintiff's constitutional rights, there is no inappropriate conduct in this regard to impute

---

[27] Plaintiff contends that the affidavit misrepresents the content of this conversation. The Court has reviewed the affidavit and the text message conversation in question and finds that this assertion is without support in the record.
[28] *Malley v. Briggs*, 475 U.S. 335, 345 (1986).
[29] *See id.*

8

to Richard, and he is likewise entitled to qualified immunity on the false arrest claims.

### B. Excessive Force

Plaintiff also alleges that Readeau used excessive force in violation of his Fourth Amendment rights. In order to prevail on such a claim, he must present evidence to support the following elements: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable."[30] "[A]n injury is generally legally cognizable when it results from a degree of force that is constitutionally impermissible—that is, objectively unreasonable under the circumstances."[31] In determining the objective reasonableness of the force, a court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[32]

Plaintiff's own deposition testimony belies his assertions that excessive force was used in his arrest. He testified that there was no physical altercation associated with his arrest.[33] Indeed, because Plaintiff's young niece was home, Readeau allowed him to exit the house prior to placing him in handcuffs. Plaintiff contends that the mere use of handcuffs constitutes excessive force; however, he cites no law in support of this contention. On the record before it, the Court finds that there is no evidence whatsoever to support a claim of excessive force. Accordingly, Defendants are entitled to dismissal of this claim.

---

[30] *Flores v. City of Palacios,* 381 F.3d 391, 396 (5th Cir. 2004).
[31] *Bush v. Strain,* 513 F.3d 492, 501 (5th Cir. 2008).
[32] *Graham v. Conner*, 490 U.S. 386, 396 (1989).
[33] Doc. 16-7 at p. 46.

**II. Qualified Immunity- State Law Claims**

Readeau and Richard also assert that they are, pursuant to Louisiana Revised Statute § 9:2798.1, entitled to qualified immunity for the state law claims asserted against them. This statute provides:

> B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.

With regard to police officers, Louisiana courts have held that their official duties include "the duty to maintain peace and order, a police officer has a duty to prevent crime, enforce the law, and protect the citizenry."[34] "The decision to issue a summons or make an arrest normally lies within the discretion of law enforcement officials, and therefore, the exercise of that discretion should not result in civil liability."[35]

As outlined above, Plaintiff has failed to present any evidence that the warrant at issue in this matter was based on any fraudulent misrepresentation or omission. Consequently, Readeau was acting within his discretionary authority when he chose to pursue a warrant and arrest Plaintiff. Likewise, he has failed to present evidence of any excessive force, as Plaintiff himself concedes that this arrest was nonviolent in nature. Plaintiff's unsubstantiated assertions of bad faith, without more, are insufficient to defeat summary judgment on this issue. Accordingly, Plaintiff's state law claims are dismissed.

**III. Claims against the City of Mandeville**

Plaintiff also brings a § 1983 claim against the City of Mandeville. Plaintiff alleges that the city's policies permitted the violation of his

---

[34] *Herrera v. First Nat. Ins. Co. of Am.*, 194 So. 3d 807, 815 (La. App. 1 Cir. 2016).
[35] *Id.*

constitutional rights. "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[36] This claim fails, however, for the simple reason that Plaintiff has failed to provide support for his allegations of constitutional violations. Accordingly, the claims against the City of Mandeville must also be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**. Plaintiff's claims against all Defendants are **DISMISSED**.

New Orleans, Louisiana this 29th day of September, 2016.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[36] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009)